IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| **GABRIELLE PEREZ,** | * | |
| Plaintiff | * | Civil Action No.: 14-682-MCR |
| v. | * | |
| **THOMAS E. PEREZ,** *et al.* | * | |
| Defendants. | * | |
| **OUTDOOR AMUSEMENT BUSINESS ASSOCIATION, INC.,** **REITHOFFER SHOWS, INC.,** **STRATES SHOWS, INC.,** | * * * | |
| Defendant Intervenors. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION FOR LEAVE TO INTERVENE AS PARTIES DEFENDANT

The Outdoor Amusement Business Association, Inc., Reithoffer Shows, Inc., and Strates Shows, Inc., pursuant to Fed. R. Civ. Proc. 24 (a), move for leave to intervene as of right as additional defendants in this action on the following grounds:

I. THE INTERVENOR DEFENDANTS HAVE STANDING TO PURSUE THIS INTERVENTION

The Outdoor Amusement Business Association, Inc. ("OABA") is the national non-profit trade association that represents carnivals, circuses, food/game concessionaires, independent amusement ride owners, and others associated with the mobile amusement industry. OABA represents over 5,000 members, 200 carnivals, 15 circuses, and hundreds of traveling food/game concessionaires in North America. Its principal place of business is

in Orlando, Florida. Many OABA members live and work in Florida, including the Northern District of Florida. The OABA also includes H-2B processing agents who live or work in the Northern District of Florida and provide for the timely processing of H-2B petitions. OABA members' services are a vital driver for the national economy. According to one study of data from 2002, the fair business in California alone (which represents approximately 12% of the national population) generated economic impact of more than $2,500,000,000, taxes and fees of more than $136 million, and jobs for more than 28,000 United States citizens. http://www.cdfa.ca.gov/fe/Documents/SWEReport/FairsReport.pdf   p. 1.   Most OABA members are small, family businesses, many in their third generation of ownership. Their family livelihoods and the incomes and jobs of their U.S. employees who supervise the H-2B workers here in issue, staff their offices, provide their accounting services, make their travel arrangements, sell them fuel and equipment, and perform other business functions are also dependent on the timely processing of H-2B employees and those few available similarly-employed U.S. employees. **Exhibit 1**, Affidavit of Robert Johnson ¶ 4.

Many of OABA's member employers depend on the availability of temporary foreign guestworkers under the H-2B program to assemble and operate amusement rides, food operations and games for some 500 million patrons at county and state fairs and festivals, community, civic, and other non-profit charitable events, *i.e.*, churches, volunteer fire departments, Lions Clubs, Shriners, and others. The revenue created from these fairs, sponsors, and other events buys ambulances, firefighting equipment, and health care for young people; supports America's agricultural industry; and provides scholarships for future leaders. Many of the members are almost completely dependent on the availability of H-2B guestworkers to perform the assembly and operation of rides, games, and cooking

-2-

and service of food at these events, and few are able to find U.S. workers who are willing to take and stay in these temporary jobs that require travel from locale to locale. Exhibit 1, Affidavit of Robert Johnson ¶ 5.

The ability of OABA members to participate in the H-2B program and timely and predictably apply for and receive H-2B workers will be upset should the Department of Labor ("DoL") be allowed to resume processing H-2B petitions under its illegal regulations. They relied on existing Department of Homeland Security ("DHS") regulations for the timely processing and adjudication of H-2B visa petitions, including those authorizing them to apply directly to DHS in the event that DoL refuses or is otherwise unable to issue labor certifications or prevailing wage determinations. Some of the members are currently in limbo, lacking DoL certification and unable to get a recalcitrant DHS to process their H-2B visa petitions. This timely and predictable processing was an important factor when they set up the contracts, tours, and other business operations under which they currently operate. The OABA seeks to protect its members' interests by defending this Court's permanent injunction against DoL's illegal regulations. Exhibit 1, Affidavit of Robert Johnson ¶ 6.

Reithoffer Shows, Inc., is a Florida corporation with a principal place of business in Gibsonton, Florida. Reithoffer operates as a carnival business at numerous locations throughout the eastern United States, including in Fort Myers, Naples, Estero, Gibsonton, and the Pensacola Interstate Fair in Pensacola, Florida. Reithoffer has participated in the H-2B program for many years and anticipates doing so in the future. Reithoffer intervenes to protect its interests in the timely processing of its H-2B petitions in the future. Exhibit 2, Affidavit of Rick Reithoffer ¶ ¶ 3-5.

Strates Shows, Inc., is a Florida corporation with a principal place of business in Orlando, Florida. Strates operates as a carnival business at numerous locations throughout the eastern United States, including in Orlando, Kissimmee, Fort Pierce, Vero Beach, Sanford, and the North Florida Fair in Tallahassee, Florida. Strates has participated in the H-2B program for many years and anticipates doing so in the future. Strates intervenes to protect its interests in the timely processing of its H-2B petitions in the future. Exhibit 3, Affidavit of Jay Strates ¶ 3-5.

To establish standing in this administrative procedures case under 5 U.S.C. § 702, the Intervenor Defendants must simply demonstrate that the contested agency action will cause them an injury in fact and that the injury affects an interest "arguably within the zone of interest to be protected" by the statute at issue. *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998). The association and its members have established that the stay of the permanent injunction will cause immediate injury because of their employment of H-2B workers, and that injury is within the zone of interests protected by 5 U.S.C. § 702. Further, the association has standing to bring a claim on behalf of its members where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Each of these requirements has been satisfied. Exhibit 1, Affidavit of Robert Johnson ¶ 7.

## II. THE INTERVENOR DEFENDANTS MEET ALL OF THE REQUIREMENTS TO INTERVENE OF RIGHT

The Intervenor Defendants are permitted to intervene "of right," and the Court "must" permit the intervention, whenever the movant "claims an interest relating to the property or transaction that is the subject of the action," and those claims are "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. Proc. 24 (a) (2). Indeed, courts have upheld the right of employers to intervene in H-2 litigation instigated by employees. *Phillips v. Brock*, 652 F. Supp. 1372, 1374 (D. Md. 1987), *vacated on other grounds*, 854 F.2d 673 (4th Cir. 1988).

### A. The Intervenor Defendants Have an Interest in the Subject Matter of This Case

The Intervenor Defendants have an interest in the subject matter of this litigation, *i.e.*, the timely and predictable processing of H-2B visa petitions, DoL's role in that process, and the enforceability of DoL's regulations. They also have an interest in filing petitions and having them approved by DHS pursuant to current DHS regulations, and that interest is impaired if DHS can force employers to jump through illegal hoops. The Intervenor Defendants will be adversely affected in their ability to meet their contractual business obligations if the Court stays its permanent injunction. If the injunction is stayed, the ability of the Intervenor Defendants to have their visa petitions timely processed under existing DHS regulations will be impaired, and they will be subjected to DoL's illegal regulations. In addition, the Intervenor Defendants will be forced to compete and potentially lose contracts to those employers who received timely processing of their H-2B workers. Exhibit 1, Affidavit of Robert Johnson ¶ 8; Exhibit 2, Affidavit of Rick Reithoffer ¶ 7; Exhibit 3, Affidavit of Jay Strates ¶ 7.

## B. Staying the Permanent Injunction Will Impair the Ability of the Intervenor Defendants to Protect Their Interest in Timely and Predictable Processing of Their H-2B Visa Petitions

Disposition of the pending motion to stay the permanent injunction will, as a practical matter, impair and impede the ability of the Intervenor Defendants to protect their present and future business interests and the interests of their members in the timely and predictable processing of H-2B visa petitions. Exhibit 1, Affidavit of Robert Johnson ¶ 9; Exhibit 2, Affidavit of Rick Reithoffer ¶ 8; Exhibit 3, Affidavit of Jay Strates ¶ 8. The Intervenor Defendants should, by all rights, be free of DoL's illegal regulations, yet DoL seeks to keep it in place, first by manufacturing an "emergency," then by misrepresenting the legal requirements placed on another agency (DHS), and then contorting its own strategic choices into extraordinary circumstances for an agency that is not even a party to this litigation.

DoL grounds its argument by artificially manufacturing an emergency when none exists. According to DoL, the permanent injunction prohibits it from issuing labor certifications or any other advice to DHS, Doc. 16, at 1, but this is only true if DoL chooses to enforce the injunction beyond the Northern District of Florida and further chooses to regard the guidance letters that it used for 50 years as prohibited legislative rules, *see* Doc. 16, at 4. From this manufactured premise, it then contends that not DoL, but another agency not even a party to this litigation, is immobilized and unable to perform its responsibilities because it chose to rely upon illegal advice. Doc. 16, at 1. This astonishing assumption is not even supported with an affidavit. DoL then declares that its own choices and the unwillingness of another agency to act has created an "emergency." Doc. 16, at 6, 8. And this "emergency situation" can "only be addressed by DHS and DoL issuing an interim final rule," and "the H-2B program will remain inoperative" until that time. Doc. 16, at 1-2,

6. Under DoL's causal reasoning, there can be little doubt that "for want of a nail, the shoe was lost." See 2 Benjamin Franklin, *Poor Richard's Almanac* 375, 377 (1758).

DoL's argument is fundamentally based on several palpable misrepresentations of DHS's powers and responsibilities. According to DoL, DHS's consultation with DoL "is required by the statute," but that consultation is discretionary, not mandatory. *See* 8 U.S.C. § 1184 (c) (1).

Further, DoL contends that DHS can simply refuse to stop processing H-2B visa petitions. This misrepresents DHS's responsibilities under the statute. Under the immigration statute, DHS has a mandatory duty under which H-2B petitions "shall be determined" by DHS. 8 U.S.C. § 1184 (c). USCIS has even recognized this mandatory responsibility to "consider all the evidence submitted." 8 C.F.R. § 214.2 (h) (9) (i). The failure to perform a non-discretionary duty is quintessentially arbitrary and capricious. For example, an agency required to act by statute cannot simply quit processing applications for deepwater drilling permits and declare a moratorium. *Hornbeck Offshore Servs., LLC v. Salazar*, 696 F. Supp. 2d 627, 636-38 (E.D. La. 2010).

Moreover, DoL contends that DHS cannot meet its responsibilities under the immigration statute unless it receives consultation from DoL. Doc. 16, at 3, 5. In fact, DoL contends that "the entire H-2B program will remain shut down" if a stay is not granted. Doc. 16 at 6. Once again, it simply is not so. A mere one day after DoL's threat, DHS has resumed adjudicating a significant portion of H-2B visa petitions, even without a stay having been granted. **Exhibit 4**, E-Mail from USCIS (Mar. 17, 2015). Even more tellingly, DHS's own regulations to this day continue the 50-year tradition of allowing employers to submit "countervailing evidence" in the event that DoL refuses or is otherwise unable to

issue labor certifications. In contrast to the H-2A program, which makes it an "automatic den[ial]" if the employer fails to produce a labor certification, 8 C.F.R. § 214.2 (h) (5), the H-2B program requires DHS to take action in the event of a non-determination by DoL:

> (2) Notice that certification cannot be made attached -- (i) Countervailing evidence. If a petition is submitted containing a notice from the Secretary of Labor or the Governor of Guam that certification cannot be made, and is not accompanied by countervailing evidence, the petitioner shall be informed that he or she may submit the countervailing evidence in accordance with paragraphs (h)(6)(iii)(E) and (h)(6)(iv)(D) of this section.
>
> (ii) Approval. In any case where the director decides that approval of the H-2B petition is warranted despite the issuance of a **notice by the Secretary of Labor** or the Governor of Guam that **certification cannot be made, the approval shall be certified by the Director to the Commissioner pursuant to 8 CFR 103.4**. In emergent situations, the certification may be presented by telephone to the Director, Administrative Appeals Office, Headquarters. If approved, the petition is valid for the period of established need not to exceed one year. There is no appeal from a decision which has been certified to the Commissioner.

8 C.F.R. § 214.2 (h) (9) (iii) (B) (emphasis added).

In its final act of legal alchemy, DoL contends that its self-manufactured "emergency" qualifies as "extraordinary circumstances" under *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 393 (1993). In truth, both DoL and DHS have merely made an extraordinary series of "strategic choices that later turn[ed] out to be improvident." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980). DoL has chosen to apply the permanent injunction nationwide and to refrain from issuing guidance letters. DHS has chosen to ignore its statutory mandate and to shut down the program when its own regulations require it to act. The only thing "extraordinary" about these circumstances is DoL's belief that its power grab can be continued because another agency not even a party to this litigation refuses to meet its obligations.

**C. The Existing Parties Will Not Adequately Protect the Interest of the Intervenor Defendants in Timely and Predictable Processing of Their H-2B Visa Petitions**

The Department of Labor defendants cannot adequately protect the interests of the Intervenor Defendants. The Applicants for Intervention have interests distinct from those of the Department of Labor defendants. The Intervenor Defendants support the permanent injunction, something DoL opposed. Further, the Intervenor Defendants contend that staying the permanent injunction does nothing more than allow DoL to continue its lawlessness. Finally, the Intervenor Defendants want to protect their rights to timely and predictable DHS adjudication of their present and future H-2B petitions, whereas the DoL defendants barely even acknowledge DHS's responsibilities. As a result, it is obvious that the DoL defendants will not take any, much less all, actions necessary to protect the interests of the Intervenor Defendants and their members. Unless intervention of right is permitted, no party will oppose the "uncontested" pending motion and fight for employer rights to timely and predictable DHS processing and adjudication. Exhibit 1, Affidavit of Robert Johnson ¶ 10; Exhibit 2, Affidavit of Rick Reithoffer ¶ 9; Exhibit 3, Affidavit of Jay Strates ¶ 9. *See Advisory Committee Notes* (1966) (movant need only show a "fair probability that the representation was inadequate").

**D. Granting Leave to Intervene "of Right" Will Not Unduly Delay or Prejudice the Rights of the Parties**

The Intervenor Defendants move to intervene "of right," not for "permissive intervention" under Fed. R. Civ. Proc. 24 (b). When moving to intervene "of right," delay or prejudice to the existing parties is not a factor. *Cf.* Fed. R. Civ. Proc. 24 (b) (3). Nevertheless, it is instructive that, even though no H-2B employers are parties to the current litigation, DoL has constructed its motion to stay the permanent injunction on the

premise that it must do so to avoid prejudice to employers. There is no claim whatsoever that the permanent injunction must be stayed to avoid prejudicing "the original parties' rights." *Cf.* Fed. R. Civ. Proc. 24 (b) (3).

### E. The Intervenor Defendants Do Not Seek to Re-Litigate the Case, but Only to Protect Their Interest in the Permanent Injunction

As required by Fed. R. Civ. Proc. 24 (c), a "pleading that sets out the claim or defense for which intervention is sought" has been attached. **Exhibit 5**, Intervenors' Answer and New Matter. However, the Intervenor Defendants do not seek to re-litigate the entire case. To the contrary, the Intervenor Defendants support the permanent injunction. Consequently, the Intervenor Defendants have limited the scope of their responsive pleading solely to the claim that the permanent injunction should be stayed.

### CONCLUSION

Wherefore, the Intervenor Defendants pray that the Court grant leave for them to intervene and oppose the pending motion to stay the permanent injunction.

/s/Robert C. Palmer, III
Robert C. Palmer, III
Wade, Palmer & Shoemaker, P.A.
14 N. Palafox Street
Pensacola, Florida 32502
Phone: 850-429-0755
Fax: 850-429-0871
bpalmer@wpslawyers.com

/s/R. Wayne Pierce
R. WAYNE PIERCE
(*pro hac vice* to be submitted)
The Pierce Law Firm, LLC
133 Defense Highway, Suite 201
Annapolis, Maryland 21401-7015
Phone: (410) 573-9955
Fax: (410) 573-9956
Email: wpierce@adventurelaw.com
**Attorneys for Defendant Intervenors**

### CERTIFICATE PURSUANT TO LOCAL RULE 7.1 (B)

Counsel for defendant intervenors hereby certifies that good-faith attempts to resolve their Motion for Leave to Intervene have been made. Counsel certifies that, pursuant to Local Rule 7.1(B) of the Rules of the United States District Court for the Northern District of Florida, it has conferred with counsel for the Plaintiff and Defendants in a good faith effort to resolve by agreement the issues raised in this Motion, and neither Plaintiff's counsel nor Defendants' counsel agrees to the requested relief.

/s/Robert C. Palmer, III
Robert C. Palmer, III

### CERTIFICATE OF SERVICE

On March 18, 2015, this Motion for Leave to Intervene as Parties Defendant was served electronically by the Court's CM/ECF system on all counsel of record, each of whom is a filing user, as well as their parties.

/s/Robert C. Palmer, III
Robert C. Palmer, III